UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

USA,

                     Plaintiff,

-vs-                                                 Case No. 2:07-cv-403-FtM-29SPC

REAL PROPERTY LOCATED AT 2676 LARMIE
STREET, FORT MYERS, FL 33916 AND ONE
2006 FORD F-150 PICKUP TRUCK,

                    Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the United States of America's Amended Motion for Summary Judgment (Doc. #50) filed on June 23, 2008. The Defendant filed his Response (Doc. # 56) on August 2, 2008. The District Court stayed the case, (Doc. # 62) and referred the matter to the undersigned on November 3, 2008. The Motion is now ripe for review.

## FACTS

On March 8, 2006, the claimant Isaac L. Marion (Marion) purchased the defendant real property located at 2676 Larmie Street, Fort Myers, Florida (Larmie property) for $ 22,800. On April 18, 2006, Marion also purchased the defendant Ford F-150 pickup truck for $56,039.40 with a $10,000.00 down payment using money obtained from drug proceeds. Marion financed the remaining $42,960.56 with Ford Motor Credit. The F-150 is registered to Good Faith Development, Inc. Marion is listed as the president, vice-president, and treasurer of the corporation and is listed

as the owner of at least half of the corporation's 7,500 shares of stock. Pursuant to Marion's federal income tax returns from the years 2000 through 2005, Marion made a total of $57,000.00.

As part of their investigation, law enforcement agents identified assets belonging to Marion and evaluated whether they were subject to forfeiture. To that end, law enforcement agents ordered an appraisal and lien report for the real property located at 2676 Larmie Street, Fort Myers, Florida. On April 27, 2006, the Larmie property was appraised for $3,000, and it was recommended by the United States Marshals Service (property custodians for the United States) that forfeiture of the property not be sought, notwithstanding the fact that the real property was purchased with drug proceeds, because it had insufficient equity. Law enforcement agents also looked into the potential forfeiture of a 2006 Ford F-150 pick-up truck, but learned that, although it too was purchased with drug money, at the time of indictment in July 2006, the truck had a lien of approximately $42,000 and did not have sufficient equity to meet federal guidelines for forfeiture.

On July 19, 2006, Marion was named in an Indictment returned in the Middle District of Florida on charges of: Count One, conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine from at least December 2000, through December 18, 2005; and Count Three, distribution of cocaine on July 15, 2005. United States v. Williams, et al., 2:06-cr-88-FtM-29SPC (Doc. 3) (Criminal Case).

The Indictment contained forfeiture allegations pursuant to 21 U.S.C. § 853(a)(1) and (a)(2), seeking forfeiture of the "Defendants' right, title, and interest in all property constituting proceeds of the illegal drug activity with which the defendants were charged, and all property used or intended to be used in any manner or part to commit, or to facilitate the commission of such offenses." The

Forfeiture Allegations also identified four specific real properties that the government alleged were subject to forfeiture, including real property located at 2675 Blake Street, Fort Myers, Florida.

On July 21, 2006, Marion entered into an Agreement with Bank of America, which provided for a line of credit in the amount of $100,000 secured by 2675 Blake Street.(Doc.# 50, Ex. 1, Bank of America Home Equity Agreement). On July 27, 2006, $79,928 was advanced from the home equity line and transferred to Marion's Bank of America checking account ending in the number 9143. This transfer maxed out the home equity line of credit, bringing the total amount extended to $99,999.[1]

In July 2006, Marion began the process of constructing a residence on the Larmie Street property. His first step was to obtain the necessary building permits. The building permit was approved in September, approximately the same time Marion was arrested. After his arrest, Kathy Greene, Marion's fiancé, took responsibility for overseeing the construction. She paid for most of the construction with the Blake Street home equity loan proceeds. *See* (Doc. # 50, Ex. 2, BOA Bank Statement, Kathy Greene's corresponding ledger, and City of Fort Myers permitting records).

In July 2006, Marion also began aggressively paying down the lien against the Ford F-150 with the loan proceeds.[2] In May, June, and the beginning of July of 2006, Marion was making

---

[1] Approximately $12,000 of the equity funds were transferred to two other Sun Coast Accounts belonging to Marion

[2] The payments to Ford Motor Credit primarily were made with money orders so the government cannot trace all of the payments to the home equity loan proceeds. Because the total amount of the payments coupled with the documented use of the loan proceeds to fund the construction of the Larmie residence slightly exceed the amount Marion received from the loan, it is likely that some drug proceeds were used to purchase the money orders sent to Ford Motor Credit. The government, however, is willing to accept for purposes of this motion that the loan proceeds funded the Ford Motor Credit payments as Marion has asserted.

monthly payments of $1,000. Beginning in late July 2006, however, Kathy Greene, on his instruction, began making monthly payments of approximately $5,000 a month. Then, in January 2007, Kathy Greene remitted a $13,000 cashier's check to Ford Credit, leaving a loan balance of approximately $3,000. A few days later, the loan was satisfied in full. In all, more than $38,000 was paid on the loan between late July 2006 and mid-January 2007. *See* (Doc. # 50, Ex. 3, Ford Motor Credit Payment Records).

On September 8, 2006, Marion was arrested on the indictment, which had been sealed since July 2006. The same day, the government recorded a *lis pendens* against the property. On October 13, 2006, Marion, and his attorney, Wilbur Smith, met with the case agent, Drug Enforcement Administration (DEA) Task Force Agent Robert Leverenz, for Marion's first proffer. During that meeting, they discussed Marion's underlying criminal activity.

As of October 13, 2006, Kathy Greene, as power of attorney for Marion, had spent approximately $32,400 of funds received from the home equity line of credit towards the construction of a residence on the Larmie property, including having the foundation poured, plumbing installed, blocks and lumber purchased, and the house framed.

On November 9, 2006, Marion entered into a plea agreement with the United States in which he agreed to forfeit his interest in any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. §§853(a)(1) and (2), and he also "agree[d] and consent[ed] to the forfeiture of his interest in these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action." (Criminal Case, Doc. 83, pp. 8-9). Specifically, the defendant agreed to forfeit his interest in the four real properties and several personal properties, which were identified as subject

to forfeiture pursuant to 21 U.S.C. § 853.[3] (Criminal Case, Doc. 83, pp. 8-9). He further agreed "to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers." (Criminal Case, Doc. 83, p. 10). Marion acknowledged that his primary source of income was derived from the sale of cocaine in the Lee County, Florida area. (Criminal Case, Doc. 83, pp. 6-17).

As of November 9, 2006, Kathy Greene had made payments for the roof, stucco on the residence, and electrical installation for the Larmie property from funds in the Bank of America account where advanced equity funds were deposited. On December 21, 2006, Kathy Greene cleared out the Bank of America account 9143 with a final $255 withdrawal. Thus, from July 2006, through December 2006, Kathy Greene spent approximately $48,935 on the construction of the residence on the Larmie property. All of these funds were paid from the Bank of America account 9143 into which the equity funds from the Blake Street property had been deposited. In addition, approximately $40,000 from Bank of America account 9143 was paid to Marion's attorneys in relation to his criminal defense.

On January 9, 2007, Agent Leverenz again met with Marion and his attorneys, Wilbur Smith and David Macey, for another proffer. During that meeting, the parties discussed Marion's involvement in various drug activities. On March 16, 2007, a Preliminary Order of Forfeiture was entered (Criminal Case, Doc. 136), forfeiting to the United States all of Marion's right, title, and

---

[3] Properties included the real properties located at 2929 Market Street, Fort Myers, Florida, 881 Jarmilla Lane, Fort Myers, Florida, 2675 Blake Street, Fort Myers, Florida, and 3741 Madison Avenue, Fort Myers, Florida.

interest in the real properties located at 2929 Market Street, Fort Myers, Florida, 881 Jarmilla Lane, Fort Myers, Florida, 2675 Blake Street, Fort Myers, Florida, and 3741 Madison Avenue, Fort Myers, Florida. Although Marion was not the titled owner of record of the real property located at 2929 Market Street, he resided at 2929 Market Street during the period of the conspiracy.

On March 19, 2007, Marion was sentenced and the forfeiture was included in the Judgment. (Criminal Case, Doc. 138). On May 16, 2007, Agent Leverenz met with Marion and Assistant United States Attorney Jesus Casas for an interview. During that interview, Marion was asked about his assets and stated that: (a) he had purchased the real property located at 3741 Madison Avenue, Fort Myers, Florida with drug proceeds; (b) he later took out a loan against the Madison Avenue property through Suncoast Schools Federal Credit Union to build a residence on the real property located at 2675 Blake Street, Fort Myers, Florida; and (c) he then took out a loan against the Blake Street property with Bank of America to build a residence on 2676 Larmie Street, Fort Myers, Florida.

After that interview, the United States realized that the property located at 2676 Larmie Street might have had sufficient equity for forfeiture. Moreover, based on the above discussion, the United States also had reason to believe that the Larmie property was traceable to property that was previously identified as subject to forfeiture – specifically, the residence was constructed post-Indictment with loan proceeds traceable to the equity in the Blake Street property, which had been identified in the Indictment as subject to forfeiture.

On June 20, 2007, the United States filed a civil forfeiture Complaint against the Larmie property and Ford F-150, alleging that these properties constituted proceeds traceable to an exchange for a controlled substance, specifically cocaine, in violation of 21 U.S.C. § 841(a)(1), and/or

constitute property involved in a money laundering transaction in violation of 18 U.S.C. §§1956 and/or 1957 and, therefore, are subject to forfeiture pursuant to 21 U.S.C. §881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

On August 13, 2007, Isaac Marion and Kathy Green, as Trustee, filed a Notice of Consent to Forfeiture. (Doc. 15). Subsequently, Isaac Marion[4] withdrew his consent and on August 20, 2007, he filed an Answer to the Complaint. (Docs. #18 and 19). On August 28, 2007, Isaac Marion filed a claim to the defendant properties. (Doc. # 27). In his claims, Marion alleges he purchased the properties and is the true owner. These facts as presented by the Government are undisputed by Marion.

However, Marion does dispute that his assets were not discussed at the first two proffers. Marion maintains that his assets were discussed. Marion further asserts that, at the May 16, 2007 proffer, the government representatives told him that he was lucky because the government was going to let him keep the bank accounts, pick-up truck and Larmie property. He further asserts that the government representatives told him that if they wanted to, they could forfeit all of his property. The government strongly disputes that these statements were ever made.

## **STANDARD OF REVIEW**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under

---

[4]Kathy Greene's consent, as Trustee, was never withdrawn.

governing law. Id. The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-323. Conversely, if reasonable minds could find a genuine issue of material fact, then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

Summary judgment is appropriate in civil forfeiture cases. Once a claimant establishes that he has Article III standing, the burden shifts to the United States to prove by a preponderance of the evidence that the seized property is subject to forfeiture. U.S. v. $37,768.00 in U.S. Currency, 2007 WL 3197740 *6 (M.D. Fla. October 26, 2007) (citing 18 U.S.C. § 983(c)(1)). A preponderance of evidence means that the United States must present an amount of evidence sufficient to persuade the court the claim or contention is more likely true than not true. $37,768.00 in U.S. Currency, 2007 WL 3197740 at *6. "In evaluating the evidence in a civil forfeiture proceeding, the court must use

a 'common sense view of the realities of normal life applied to the totality of the circumstances' instead of viewing the evidence with 'clinical detachment.'" United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir.2001).

## **DISCUSSION**

The Government argues the Larmie property and the F-150 pickup truck are subject to forfeiture because (1) the subject properties were purchased with the proceeds of drug transactions, (2) Marion was not an innocent owner, and (3) estopple does not apply to the instant forfeiture. Marion argues there are several disputed genuine issues of material fact that prevent summary judgment in this case. Specifically, Marion argues the Government is prevented from seizing the subject properties due to estopple.

### *(1) Whether the Subject Properties were Purchased with Drug Proceeds*

The law provides for the forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange . . ." 21 U.S.C. § 881(a)(6).

The Government argues that both the Larmie property and the F-150 were purchased with proceeds of Marion's drug transactions. Marion does not dispute that the subject properties were purchased with a $100,000.00 line of credit obtain from the Bank of America and secured by the real property located at 2675 Blake Street, Fort Myers, Florida. It is undisputed that the Blake Street properties were purchased with the proceeds of drug transactions. Marion admits that he openly

transferred money from the Bank of America credit line to his personal checking account to make payments on the F-150 pickup and the Larmie property.

Under 21 U.S.C. § 881(a)(6) money and property that are traceable to income derived from drug proceeds are subject to forfeiture. It is undisputed by Marion that the money used to obtain the subject properties was obtained from the equity loan secured by the Blake Street property. Marion admits the Blake Street property was purchased with drug money. If assets purchased with drug proceeds are used to secure loans or are sold for cash, the proceeds of those financial transactions are likewise subject to forfeiture. *See* U.S. v, Meadowbrook Lake Condominium, Unit 308, Condominum # 8, Located at 314 SE 10th Street, Dania Florida, 2007 WL 809681 * 4 (S.D. Fla. March 15, 2007) (granting the forfeiture of property that was purchased using a loan secured by property that was purchased with the proceeds of a drug transactions). The money used to purchase the Larmie property and the F-150 pickup were clearly traceable to illegal drug proceeds and, thus it is respectfully recommended the properties are subject to forfeiture.

### *(2) Whether Marion was an Innocent Owner*

An "innocent owner" is defined as an owner who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2). A claimant with an interest in the property acquired after the conduct giving rise to the forfeiture took place, who at the time he acquired the property (a) was a bona fide purchaser for value and (b) did not know and was reasonably without cause to believe the property was subject to forfeiture is an innocent owner within the meaning of the statute. 18 U.S.C. § 983(d)(3)(A).

Marion admitted to engaging in drug trafficking for over five (5) years and to using the proceeds from his drug business to purchase property. He used the proceeds from his drug trafficking operation to purchase the Blake Street property. He used the Blake Street property to secure the loan to purchase the Larmie property and the F-150 pickup. At all times, Marion knew the funds used to purchase the subject properties were derived from drug transactions. Clearly, Marion knew of the conduct and participated in the criminal activity that lead to the forfeiture action. Thus, it is respectfully recommended that Marion cannot be an innocent owner under the terms and conditions of the statute.

### *(3) Whether Estopple Applies*

A party asserting estoppel must establish the following three elements of a traditional equitable-estoppel claim: (1) "words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things" (2) "wilfulness or negligence with regard to the acts, conduct or acquiescence" and (3) "detrimental reliance by the other party upon the state of things so indicated." Tefel v. Reno, 180 F.3d 1286, 1302 -1303 (11th Cir. 999)(citing Federal Deposit Ins. Corp. v. Harrison, 735 F.2d 408, 413 (11th Cir.1984)).

However, the Supreme Court has never resolved whether, and in what manner, the doctrine of equitable estoppel can be applied against the federal government. The Court has intimated that estoppel against the government may not be available at all. Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S. Ct. 2465, 110 L. Ed.2d 387 (1990) ("In sum, Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have

reviewed."). Although the Court has not adopted a per se rule prohibiting the application of estoppel against the government, the Court has clarified on numerous occasions that "the government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Service of Crawford, 467 U.S. 51, 60, 104 S. Ct. 2218, 81 L. Ed.2d 42 (1984); Richmond, 496 U.S. at 423-424, (declining to adopt a rule prohibiting estoppel against the government). Moreover, in its decisions declining to adopt a prohibition on estoppel against the government, the Court has consistently suggested that, if available at all, estoppel against the government depends on a showing of affirmative misconduct. Richmond, 496 U.S. at 421("Our own opinions have continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel against the Government.").

Based upon the holdings in the other circuits, and the Supreme Courts decision in Richmond, the Eleventh Circuit determined that to establish a claim for equitable estopple against the government, the party seeking to establish the estopple must prove some affirmative misconduct by the government, in addition to the traditional standards needed to establish estopple. Tefel, 180 F.3d at 1302 -1303.

The Government argues that, there is no *res judicata* in civil forfeiture, that no promises were made to Marion regarding the Larmie property or the F-150 pickup, and there was no affirmative misconduct on the part of the agents who completed the plea deal with Marion. Marion argues that the Government must be estopped from bringing the forfeiture action because the Government failed to include the Larmie property and the F-150 pickup in its original motion for criminal forfeiture, he relied to his detriment on the Government's promises that the property would not be subject to

forfeiture if he would plead guilty to the charges, and the dispute over whether or not a statement was made creates a genuine issue of material fact.

### *(a) Res Judicata*

*Res judicata* does not bar the DEA's administrative forfeiture of the seized currency. U.S. v. Wade, 230 F.Supp.2d 1298, 1308 n. 9 (M.D. Fla.,2002). The civil administrative forfeiture proceeding is not the same cause of action as the criminal case. Id. Moreover, "the remedies of criminal and civil forfeiture are mutually exclusive." Id. The government may prosecute a civil forfeiture proceeding even though a prior criminal forfeiture proceeding has been unsuccessful. Id. (citing United States v. Two Parcels of Real Property, 80 F.Supp.2d 1298, 1304 (M.D. Ala.2000)).

Marion argues that in the criminal indictment the grand jury included a forfeiture count listing several properties sought by the government to be forfeited. On March 7, 2008, the District Court entered its Final Order and Judgment of Forfeiture (Doc. # 273). Neither the Larmie property nor the F-150 were included in the criminal indictment nor in District Judge John E. Steele's Final Order.

In the criminal case, the United States did not seek to forfeit the Larmie property or the F-150 pickup. Since there was no attempt to criminally forfeit those funds, *res judicata* does not apply. Wade, 230 F.Supp.2d at 1308 n. 9 (citing Tilley v. United States, 1998 WL 812395 (N.D.Tex.1998)). Therefore, the prior actions of the Government regarding the subject properties does not prevent it from bringing the instant civil forfeiture action. Id. at * 2 (holding that res judicata did not bar the government from seeking civil forfeiture where it could have but did not seek criminal forfeiture of the asset as part of the criminal case).

### (b) Whether Marion Meets the Standard Elements of Equitable Estopple

Marion argues he relied on the Government's assertions that it would not seek the forfeiture of the Larmie property or the F-150 pickup. The Government disputes Marion's assertion that officers or agents involved in the plea discussions told him the Government would not seek forfeiture on the subject properties.

Initially, regarding whether or not there is a genuine issue of material fact as to the Government's statements, Marion did not begin to have plea discussions with the Government until November of 2006. Further he presents no records or documents to support his claim that the Government offered to let him keep the Larmie property and the F-150. Mere conclusory allegations are not sufficient to establish a genuine issue of material fact. Demyan, 148 F. Supp. 2d at 1320 (citing Avirgan, 932 F.2d at 1577).

Marion argues the Government knew of the subject properties and yet failed to included them in its criminal forfeiture action. As such, Marion asserts this proves his point that the Government intended to allow him to keep the subject properties. However, when the Government first indicted Marion and filed its subsequent forfeiture claim in the criminal action, the Larmie residence only had $3000.00 in equity and the F-150 had an outstanding lien of approximately $42,000. The United States Marshal Service suggested that neither property had sufficient equity to meet federal guidelines for forfeiture. Thus, it is clear that the original refusal to seize the property was not based on agreement between Marion and the Government but based upon the Government's forfeiture guidelines.

Furthermore, the undisputed facts of the case demonstrate that Marion had purchased the property and was paying off the notes with drug proceeds prior to his beginning negotiations with the Government. Marion began the process of constructing the residence on the Larmie Street property in July 2006. Also in July of 2006, Marion began aggressively paying down the lien against the Ford F-150 with the loan proceeds obtained from the Blake street property. In May, June, and the beginning of July of 2006, Marion was making monthly payments of $1,000 on the F-150. However, beginning in late July 2006, Kathy Greene, on Marion's instruction, began making monthly payments of approximately $5,000 a month on the F-150. As of October 13, 2006, Kathy Greene, as power of attorney for Marion, had spent approximately $32,400.00 of funds received from the home equity line of credit towards the construction of a residence on the Larmie property.

On December 21, 2006, Kathy Greene cleared out the Bank of America account 9143 with a final $255 withdrawal. Thus, from July 2006, through December 2006, Kathy Greene spent approximately $48,935 on the construction of the residence on the Larmie property. All of these funds were paid from the Bank of America account 9143 into which the equity funds from the Blake Street property had been deposited. Then, in January 2007, Kathy Greene remitted a $13,000 cashier's check to Ford Credit, leaving a loan balance of approximately $3,000. The Government and Marion entered into a plea agreement in May of 2007.

Based upon the undisputed facts of the case, Marion had already spent substantial amounts of cash from the Bank of America equity line account on the Larmie property and the F-150 prior to entering into negotiations with the Government. Thus, even if the Government did indicate that it would not take the Larmie property or the F-150 in a forfeiture action, Marion has failed to

establish how he relied to his detriment on the Government's assurances. Having failed to establish an element of equitable estopple the claim should fail.

Marion's brief states the Government's actions are paramount to a "loan scam" however, it fails to state what affirmative misconduct was perpetrated by the Government. As noted earlier, the funds used to purchase the Larmie property and the F-150 pickup were clearly traceable to drug activity. Thus, Marion is not at risk of losing money that was obtained by legitimate means but money that was made from illegal drug transactions. Thus, there was no "loan scam" on the part of the Government.

Based upon the record, the Government entered into good faith negotiations with Marion to resolve the case. Even if the Government and Marion discussed the Larmie property and the F-150 pickup, the subject properties were not recorded in the plea deal Marion made with the Government. Therefore, there is no double dealing or affirmative misconduct on the part of the Government and as such it is respectfully recommended that Marion's estopple claim be denied.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The United States of America's Amended Motion for Summary Judgment (Doc. #50) should be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ___23rd___ day of January, 2009.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record